UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:25-cr-10045-PBS |
| LINA MARIA OROVIO-HERNANDEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through Leah B. Foley, United States Attorney for the District of Massachusetts, hereby submits this sentencing memorandum as to defendant Lina Maria Orovio-Hernandez (the "Defendant"). The Government recommends a sentence of 65 months incarceration; three years supervised release; an order of restitution in the amount of $404,194; and a mandatory special assessment of $700.[1] This prison sentence is at the bottom of the applicable advisory guideline sentencing range ("GSR"), inclusive of a mandatory 24-month sentence for Count 3 consecutive to all other Counts, and would not be greater than necessary to achieve the purposes of sentencing delineated in 18 U.S.C. § 3553(a)(2).

For more than 20 years, the Defendant lied and stole from the American people. Far from leading a law-abiding life, the Defendant was a prolific criminal whose decades-long deception was only uncovered recently. Using the stolen identity of a U.S. citizen born in Puerto Rico, the Defendant—a Colombian national without lawful status in the United States—obtained nine state IDs, received approximately $750,000 in stolen federal benefits, applied for a U.S. passport, registered to vote, and voted in the 2024 U.S. presidential election. She has never accepted

[1] The Government has filed separately a motion for forfeiture seeking a money judgment in the amount of $404,194. ECF 189.

responsibility for her crimes. A message must be sent to the Defendant and others who would steal the identity of an American citizen to obtain IDs, improperly receive federal benefits intended for the neediest members of society, and undermine the integrity of our elections that these crimes are unacceptable and carry serious penalties.

## DISCUSSION

### I. Sentencing Guidelines Calculation

In the final presentence investigation report ("PSR") dated May 29, 2026, the United States Probation Office correctly found that the Defendant's total offense level ("TOL") is 22. PSR ¶ 63.

**Group 1:** Count One (False Representation of Social Security Number – 42 U.S.C. § 408(a)(7)(B)) and Count Two (False Statement in Application for Passport - 18 U.S.C. § 1542) are grouped together because they involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan pursuant to USSG § 3D1.2(b). PSR ¶ 35. Group 1 has an adjusted offense level of 14, which includes a base offense level of 6 for Count One because the offense carries a maximum term of incarceration of less than twenty years pursuant to USSG § 2B1.1(a)(2); plus 2 levels pursuant to USSG § 2B1.1(b)(11)(C)(i) because the offense involved the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification; an increase to level 12 because the resulting offense level is otherwise less than 12 pursuant to USSG § 2B1.1(b)(11); and plus 2 levels for obstruction of justice because the Defendant committed perjury at trial pursuant to USSG § 3C1.1. PSR ¶¶ 39-44. Count Two has a base offense level of 8 pursuant to USSG § 2L2.2(a), and is not used because it has the lowest offense level for Group 1 pursuant to USSG § 3D1.3(a).[2]

---

[2] Even if the Court found that Counts One and Two should not be grouped together, the GSR

**Group 2:** Counts 4, 5, and 6 (Receiving Stolen Government Money or Property – 18 U.S.C. § 641) are governed by Section 2B1.1 and group together pursuant to USSG § 3D1.2(d). Group 2 has an adjusted offense level of 22, which includes a base offense level of 6 because the offense has a maximum term of incarceration of less than twenty years pursuant to USSG § 2B1.1(a)(2); plus 14 levels because the loss amount (including relevant conduct) is more than $550,000 but less than $1,500,000 pursuant to USSG § 2B1.1(b)(1)(H); and plus 2 levels for obstruction of justice because the Defendant committed perjury at trial pursuant to USSG § 3C1.1. PSR ¶¶ 45-50.

**Group 3:** Count 8 (Fraudulent Voting – 18 U.S.C. § 20511(2)(B)) is governed by Section 2H2.1 and has an adjusted offense level of 14, which includes a base offense level of 12 because the offense occurred by forgery, fraud, theft, bribery, deceit, or other means pursuant to USSG 2H2.1(a)(2); and plus 2 levels for obstruction of justice because the Defendant committed perjury at trial pursuant to USSG § 3C1.1. PSR ¶¶ 51-56.

Pursuant to USSG § 3D1.4(a)(b), and (c), there is an additional 2-level increase because a one-half unit is assigned for both Group 1 and Group 3 (i.e., 1.0 unit total) for each being 5 to 8 levels less serious than Group 2. PSR ¶¶ 57-59. This results in a combined adjusted offense level of 24. PSR ¶ 60. Additionally, there is a 2-level reduction because the Defendant meets the zero-point offender criteria pursuant to USSG 4C1.1(a) and (b). PSR ¶ 61. This results in a TOL of 22. PSR ¶ 63.

After determining that the Defendant has 0 criminal history points and is in criminal history category ("CHC") I, PSR ¶ 67, Probation calculated the advisory GSR to be 41 to 51 months

---

calculation would remain the same because the total offense level for Count Two would be 9 or more levels less serious than Group 2 and, therefore, disregarded. USSG § 3D1.4(c).

imprisonment in Zone D of the Sentencing Table. PSR ¶ 95. In addition, the mandatory term of 24 months imprisonment for Count Three (Aggravated Identity Theft – 18 U.S.C. § 1028A(a)(1)) must be consecutive to any other sentence imposed. PSR ¶¶ 93-94; *see also* USSG § 3D1.1(b)(2) (excluding such convictions from grouping). The Government agrees with the advisory guideline calculation. The Defendant faces a statutory maximum of 5 years imprisonment on Counts 1, 2, and 8; 10 years imprisonment on Counts 4, 5, and 6; and a mandatory 24 months imprisonment on Count 3 consecutive to any other sentence imposed. PSR ¶ 93. In addition, there is a statutory maximum of 3 years of supervised release; and 1 to 5 years probation. PSR ¶¶ 97, 100.

## II. <u>Application of the Section 3553(a) Factors</u>

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2). These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide for the needs of the defendant. They also require courts to consider the kinds of sentences available and the GSR. Here, the Government believes that 65 months incarceration, three years supervised release, restitution in the amount of $404,194, and the mandatory special assessment fee of $700, is sufficient, but not greater than necessary, to achieve the goals of § 3553(a)(2).

### *A. Nature and Circumstances of the Offense*

1. <u>Massachusetts IDs</u>

From 2004 through 2024, the Defendant used a stolen identity of a U.S. citizen, E.C., to

obtain a total of nine forms of identification from the Massachusetts Registry of Motor Vehicles ("RMV"): 3/31/2004 – MA state ID card; 8/24/2005 – MA learner's permit; 6/6/2007 – MA driver's license; 9/16/2011 – MA driver's license; 8/21/2013 – MA driver's license; 9/16/2016 – MA driver's license; 1/16/2023 – MA learner's permit; 3/10/2023 – MA driver's license; and 4/16/2024 – REAL ID. The Defendant used E.C.'s identifiers on her applications for these IDs and she submitted proofs of identification including a Social Security number card and Puerto Rico birth certificate in the name of E.C. when she applied for the 2024 REAL ID. The application for the 2024 REAL ID is the subject of **Count One** of the Superseding Indictment. PSR ¶ 11.

2. SNAP Benefits

On April 8, 2005, the Defendant applied for Supplemental Nutrition Assistance Program ("SNAP") benefits (i.e., food stamps) using E.C.'s identifiers, including her Social Security number and date of birth. After being awarded SNAP benefits, the Defendant submitted annual recertification forms. Between April 2005 and March 2013, the Defendant swore under penalty of perjury that she was a U.S. citizen with E.C.'s identifiers on eight forms submitted to the Massachusetts Department of Transitional Assistance ("DTA"), which administers the SNAP benefit program in Massachusetts. Notably, only U.S. citizens and certain lawfully present non-citizens are eligible to receive SNAP benefits. *See* 7 U.S.C. § 2015(f) and 42 U.S.C. § 1320b-7(b)(4), (d). The Defendant also presented to DTA a fraudulently obtained June 2007 temporary MA driver's license as proof of identification. In total, from April 2005 through January 2025, the Defendant fraudulently obtained $43,348 in SNAP benefits. These benefits are the subject of **Count Six** of the Superseding Indictment. PSR ¶ 12.

3. Supplemental Security Income Benefits

The Defendant used the stolen E.C. identity to apply for and receive Supplemental Security

Income ("SSI") disability benefits multiple times. Only U.S. citizens and certain lawfully present non-citizens are eligible to receive SSI benefits. *See* 42 U.S.C. § 1382c(a)(1)(B).

On November 16, 2007, the Defendant submitted an SSI application to the Social Security Administration ("SSA") using E.C.'s name, Social Security number, and date of birth. She further stated under penalty of perjury that she was a U.S. Citizen by birth; that she had never used another name; that she had never lived outside the United States; and that she had been in the United States at all times since October 17, 2007. On August 25, 2009, SSA notified the Defendant of an award of SSI disability benefits as of November 2007. On May 12, 2010, SSA informed the Defendant that she was ineligible for SSI as of February 2010 because of excess resources following her receipt of a $88,545 lump sum workers' compensation settlement. Between August 2009 and May 2010, the Defendant fraudulently received $10,709.51 in SSI benefits. PSR ¶ 14.

On June 11, 2012, the Defendant reapplied for SSI using the stolen E.C. identifiers and provided the same false statements under penalty of perjury. On July 25, 2012, SSA denied this application when the Defendant was unable to provide an acceptable Puerto Rico birth certificate. PSR ¶ 15.

On June 18, 2014, the Defendant applied again for SSI using the stolen E.C. identifiers and provided the same false statements under penalty of perjury. On August 1, 2014, SSA notified the Defendant of an award of SSI disability benefits as of June 2014. From July 2014 through January 2025, the defendant fraudulently received $101,257 in SSI benefits. These benefits are the subject of **Count Five** of the Superseding Indictment. PSR ¶ 16.

4. <u>Section 8 Rental Assistance Benefits</u>

On August 4, 2011, the Defendant applied to the Pondview Apartments in Jamaica Plain for a federally subsidized apartment under the stolen identity, including E.C.'s name, date of birth,

and Social Security number. She further represented under penalty of perjury that she was a U.S. citizen on a form that explicitly stated that non-U.S. citizens without legal status in the country were ineligible for federal rental assistance. *See* 42 U.S.C. § 1436a(a). The Defendant also provided supporting identity documents including a Puerto Rico birth certificate, Social Security card, and Massachusetts driver's license in the name of E.C. PSR ¶ 17.

On October 1, 2011, Pondview Apartments admitted the Defendant under E.C.'s identity to the complex and the multifamily housing program. That same month, the U.S. Department of Housing and Urban Development ("HUD") began making federal subsidized rental assistance payments on behalf of the Defendant under the stolen identity. From August 2012 through 2025, the Defendant also completed several annual housing recertification packets using E.C.'s identifiers under penalty of perjury. PSR ¶ 18.

On April 1, 2017, as part of unit relocation and rental recertification, the Defendant provided an updated form using E.C.'s name and date of birth stating that she was a U.S. Citizen or national of the United States, while again being reminded that non-U.S. citizens without legal status in the country were ineligible for federal rental assistance. PSR ¶ 19.

From August 2011 through January 2025, HUD provided $259,589 to the Pondview Apartments on behalf of the Defendant in federal rental subsidies under the stolen E.C. identity, which she also was ineligible for as a non-U.S. citizen without lawful status. These funds are the subject of **Count Four** of the Superseding Indictment. PSR ¶ 20.

5. <u>MassHealth Benefits</u>

The Defendant also used the E.C. identity to apply for MassHealth benefits. From August 2006 through June 2024, the Defendant fraudulently received $337,043.26 in MassHealth benefits

under the E.C. identity. PSR ¶ 21.[3]

6. Replacement Social Security Card

On February 19, 2015, the Defendant had an in-person redetermination interview for the SSI benefits at the SSA field office in Boston. During that interview, the Defendant repeated the false statements under penalty of perjury that she was E.C. and claimed E.C.'s Social Security number as her own. Additionally, during that encounter, the Defendant applied for and received a replacement Social Security number card under the E.C. identity. PSR ¶ 22.

7. Late Registered Puerto Rico Birth Certificate

In 2020 and 2022, the Defendant filed two petitions in Puerto Rico Superior Court seeking a late-registered Puerto Rico birth certificate in the E.C. identity in furtherance of the conduct discussed above. *See [E.C.] v. Ex Parte*, CIVIL NO. BY2020CV02956 (Mayaguez Superior Court); *[E.C.] v. Ex Parte*, CIVIL NO. BY2022CV03572 (Mayaguez Superior Court). During these cases, the Defendant made several false statements in pro se court filings and during testimony under oath claiming E.C.'s name, date of birth, and Social Security number as her own, and that she was born in Puerto Rico. As a result of these petitions, on October 11, 2022, the Defendant's petition was granted. On November 29, 2022, the Defendant obtained the late-registered Puerto Rico birth certificate under the E.C. identity. She submitted the 2022 Puerto Rico birth certificate to obtain the 2023 and 2024 Massachusetts IDs from the RMV, and also as proof of identification for a U.S. passport application described *infra*. PSR ¶ 23.

[3] While the Government did not charge the MassHealth loss, "[r]elevant conduct may include both acquitted and uncharged conduct . . . . if it is part of the same 'course of conduct or common scheme or plan' as the conduct underlying the counts of conviction." *United States v. Cox*, 851 F.3d 113, 121 (1st Cir. 2017) (collecting cases and quoting USSG § 1B1.3(a)(2)).

8. Voter Registration

As noted above, in January 2023, the Defendant applied for and received a learner's permit from the RMV under the E.C. identity. In Section F of that application, labeled "Voter Registration," the Defendant checked a box falsely affirming that she was a U.S. citizen under penalty of perjury. Directly above this check box, the form stated, "**We will use your information to update your voter registration or register you to vote.**" (emphasis in original). This section also stated that, "[t]o register to vote, you must be: . . . [a] U.S. citizen . . . ." The Defendant also chose not to check the box stating, "Do not use my information for voter registration." As a result of this submission, The Defendant was added to the City of Boston Election Department's voter rolls as a registered voter. This conduct is the subject of **Count Seven** of the Superseding Indictment, for which the Defendant was acquitted but remains relevant conduct as discussed *supra* at n.3. PSR ¶ 24.

9. U.S. Passport Application

On November 26, 2024, the Defendant appeared in person at the U.S. Post Office in Jamaica Plain, Massachusetts, and applied for a U.S. Passport Book. She used E.C.'s name, date of birth, and Social Security number on the application. She further represented that she was a U.S. citizen born in Puerto Rico and claimed E.C.'s parents as her own. The Defendant submitted the April 2024 Massachusetts REAL ID and the 2022 Puerto Rico birth certificate in the E.C. name as proof of identity. The Defendant signed the passport application under penalty of perjury. This application is the subject of **Count Two** of the Superseding Indictment, which is the predicate offense for **Count Three** of the Superseding Indictment. PSR ¶ 25.

10. Voting in 2024 Presidential Election

On November 5, 2024, the Defendant submitted a ballot for a U.S. presidential candidate

in the general election using the E.C. identity at a polling place in Jamaica Plain, Massachusetts. This conduct is the subject of **Count Eight** of the Superseding Indictment. PSR ¶ 26.

11. Perjury during trial

On day three of the trial in this case, the Defendant testified under oath. ECF 172. During her testimony, the Defendant made several false statements claiming that she was E.C., had her date of birth, was born in Puerto Rico, and that E.C.'s parents were her own. ECF 184 at 4:11-21, 7:21-23. Additionally, the defendant constructed an elaborate false back story for her stolen identity spanning 31 years. ECF 184 at 4:11-16:3.

The Court charged the jury as follows:

> The government bears the burden of proving that the defendant is Lina Maria Orovio-Hernandez beyond a reasonable doubt. If you have any reasonable doubt that she in fact is Lina Maria Orovio-Hernandez, then you must acquit the defendant. If you find that the government has proven the defendant is Lina Maria Orovio-Hernandez beyond a reasonable doubt, you must determine whether the government has proven all the elements as I give them to you beyond a reasonable doubt.

ECF 185 at 18:21-19:3. Because the jury convicted the Defendant on seven of the eight counts, it necessarily found beyond a reasonable doubt that the Defendant was Lina Maria Orovio-Hernandez and that she had provided false testimony claiming to be E.C.

12. Summary of Loss Amounts

| **Description** | **Amount** |
|---|---|
| SNAP Benefits (charged) | $43,348.00 |
| 2007-2010 SSI Benefits (uncharged) | $10,709.51 |
| 2014-2025 SSI Benefits (charged) | $101,257.00 |
| Section 8 Rental Assistance Benefits (charged) | $259,589.00 |
| MassHealth Benefits (uncharged) | $337,043.26 |
| **TOTAL** | **$751,946.77** |

### *B. History and Characteristics of the Defendant*

The Government has considered the known history and characteristics of the Defendant in its recommendation for a low-end guidelines sentence of 65 months' imprisonment and three years' supervised release. *See* 18 U.S.C. § 3553(a)(1). While the Defendant has not provided any biographical information to Probation on advice of counsel, government records from Colombia indicate that she is 60 years old. PSR ¶ 72. Since relocating to the Boston area without lawful status in 2004, the Defendant has had no arrests or criminal convictions prior to this case. PSR ¶¶ 65-70. This has been appropriately incorporated into the GSR calculation, including a 2-point offense level reduction. PSR ¶ 61. The Defendant has also had a history of significant medical issues, including back surgery and breast cancer. ECF 184 at 25:9-26:6, 28:16-18, 37:1-3; *see also* PSR ¶ 79.

On the other hand, the Defendant has failed to accept responsibility for her crimes. Magistrate Judge Cabell ordered that the Defendant be detained after she attempted to flee during the execution of the arrest warrant. ECF 13 at 3-4. At trial, the Defendant attempted to thwart the prosecution by perjuring herself at length on the stand. ECF 184 at 4:11-16:3, 7:21-23. Notably, this perjury follows a long history of sworn false statements in furtherance of the offense conduct described above, including through perjury in Puerto Rico court proceedings. Last week, the Defendant also filed a pro se letter and attachments accusing the Government of committing crimes, kidnapping her, and demanding the Government pay $850 million for various imagined torts against her. ECF 187.

### *C. General Deterrence*

General deterrence is also an important consideration in this case, *see* 18 U.S.C. § 3553(a)(2)(B), as those who seek to enter the United States illegally and assume false identities

must receive the clear message that such crimes will be met with serious consequences. Here, the Government's recommended sentence would deter others from engaging in similar conduct.

***D. Specific Deterrence***

With respect to specific deterrence, *see* 18 U.S.C. § 3553(a)(2)(B), the Defendant's decades-long charade did not end because she confronted a crisis of conscience. It ended after she sought to obtain yet another fraudulent identification document and was finally caught. The Defendant has used a stolen identity for more than 20 years with impunity to obtain ID cards, hundreds of thousands of dollars in federal benefits, and even vote in a U.S. presidential election. Absent a meaningful term of incarceration, the Defendant may be undeterred from engaging in similar conduct upon her release.

***E. Comparison of Sentence to Defendants with Similar Records and Conduct***

Pursuant to 18 U.S.C. § 3553(a)(6), the Court must consider the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. According to Judiciary Sentencing Information ("JSIN") data provided in the PSR, over the last five fiscal years, for the 66 defendants with the same primary sentencing guideline (2B1.1), offense level (22), and criminal history category (I) as the Defendant, and who had also been convicted of at least one counts of 18 U.S.C. § 1028A, 100% received a sentence of imprisonment in whole or in part. *See* PSR ¶ 110. The average sentence imposed was 56 months imprisonment and the median was 56 months. *Id.* Thus, the Government's recommendation of a term of 65 months imprisonment at the low end of the GSR is generally consistent with the sentences imposed for defendants with similar USSG characteristics nationwide.

The Government's recommendation for a sentence that accounts for the significant losses to federal benefit programs in addition to the mandatory 24-month sentence for the aggravated

identity charge is consistent with how courts in this district have calculated sentences in other benefit fraud and identity theft cases with significant loss amounts. For example, in *United States v. Juan Landis Chalas Villar*, No. 18-cr-10320-WGY (D. Mass.), the defendant was a Dominican national that used the stolen identity of a Puerto Rican U.S. citizen to obtain a Massachusetts state ID and over $50,000 in Section 8 housing benefits. *See id.*, ECF 1-2 at 4-6; ECF 33 at 1. The GSR was 15 to 21 months imprisonment for the charges other than aggravated identity theft. *Id.*, ECF 40 at 1. Judge Young imposed a 15-month sentence as to those charges before also applying the mandatory consecutive 24-month prison term for the aggravated identity theft charge, for an overall sentence of 39 months imprisonment. *Id.*, ECF 39.

In *United States v. Randolph Dominguez*, No. 24-cr-10368-PBS (D. Mass.), the defendant stole approximately $164,000 in Social Security benefits over a period of 22 years that were intended for his deceased father. *Id.*, ECF 29 at 1, 3. Additionally, Mr. Dominguez fraudulently received COVID relief money including a $90,000 Economic Injury Disaster Loan ("EIDL") by inflating his reported business revenue and a $3,500 Paycheck Protection Program ("PPP") payment that he improperly used for a personal vacation. *Id.* at 3-4. Mr. Dominguez also applied for an additional $200,000 EIDL using his inflated revenue figures. *Id.* Finally, Mr. Dominguez claimed his deceased father as a dependent on his tax returns to receive $4,100 in federal and state tax credits. *Id.* at 4. After pleading guilty to one count of wire fraud (18 U.S.C. § 1343) and one count of theft of government money (18 U.S.C. § 641), the defendant's GSR was calculated as 21-27 months imprisonment based largely on the actual and intended loss amount of approximately $461,000, *id.* at 2, and this Court imposed a sentence six months below the GSR for 15 months imprisonment. *Id.*, ECF 37.

When judges within this district have hewed closer to the statutory minimum of 24 months imprisonment for aggravated identity theft cases involving the theft of government benefits, the loss amounts have been lower and typically been limited to a single federal benefit program. *See, e.g., United States v. Isidro Viscaino-Soto a/k/a Ysidro Vizcaino*, No. 18-CR-10159-PBS (D. Mass.) (2 years and 1 day imprisonment for Dominican national using Puerto Rican identity to obtain approximately $9,500 in MassHealth benefits). Here, the Defendant has a GSR of 41-51 months plus an additional mandatory 24 months to run consecutively that exceeds these comparators based on the significant losses she caused for four federal benefit programs over a span of more than 20 years, as well as her additional crimes related to obtaining forms of identification and voting. If the Court were to impose a sentence significantly below this range and close to the statutorily mandated 24 months imprisonment, the sentence would create an unwarranted sentencing disparity.[4]

***F. The Kinds of Sentences Available and the GSR***

The Court must also consider the kinds of sentences available and the sentencing range under the advisory guidelines. 18 U.S.C. §§ 3553(a)(3)-(4). Because the Defendant is at a CHC I/TOL 22, the GSR is 41-51 months imprisonment in Zone D. PSR ¶ 95. As the Defendant is in Zone D, the sentencing guidelines advise that the minimum term shall be satisfied by a sentence of imprisonment. USSG § 5C1.1(f). In addition, Count 3 requires a term of 24 months imprisonment consecutive to any other sentence imposed. PSR ¶¶ 93-94; *see also* 18 U.S.C. §§

[4] The statute for Count 3 also notes that "in determining any term of imprisonment to be imposed for the felony during which the means of identification was transferred, possessed, or used, a court shall not in any way reduce the term to be imposed for such crime so as to compensate for, or otherwise take into account, any separate term of imprisonment imposed or to be imposed for a violation of this section." 18 U.S.C. § 1028A(b)(3).

1028A(a)(1) and (b)(1). Accordingly, the Government's recommended sentence is consistent with both the advisory guidelines and the sentences available under the applicable statutes.

## III. CONCLUSION

For all these reasons, the Government submits that a sentence of 65 months incarceration and three years supervised release is both necessary and appropriate after taking into consideration all of the factors set forth under 18 U.S.C. § 3553(a). Additionally, the Government respectfully requests that the Court order restitution in the amount of $404,194, with $43,348 to the Food and Nutrition Service (payable to "USDA-FNS-HQ"), $101,257 to the Social Security Administration, and $259,589 to the U.S. Department of Housing and Urban Development; and impose a special assessment of $700.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

*/s/ James J. Nagelberg*
JAMES J. NAGELBERG
Special Assistant United States Attorney

ALLEGRA K. FLAMM
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing. Additionally, this document will be mailed to the pro se Defendant at the following address:

Lina Maria Orovio-Hernandez
USMS #60337-511
Donald D. Wyatt Detention Facility
950 High Street
Central Falls, RI 02863

*/s/ James J. Nagelberg*
Special Assistant U.S. Attorney

Dated: May 26, 2026